NO. 05-1491

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

**LUCAS A. CANNY,**
Plaintiff/Appellee,

vs.

**DR. PEPPER/SEVEN-UP BOTTLING
GROUP, INC.,**
Defendant/Appellant.

APPEAL FROM THE U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
Case No. 4-03-CV-40185

HONORABLE CELESTE F. BREMER, MAGISTRATE JUDGE

**APPELLEE'S BRIEF**

William W. Graham
The Graham Law Firm, P.C.
604 Locust Street, Suite 630
Des Moines, IA 50309
Phone: (515) 282-0230
Facsimile: (515) 282-4235
E-mail: wwg@grahamlawiowa.com

ATTORNEY FOR APPELLEE

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS…………………………………..…..…………i-ii

TABLE OF AUTHORITIES……………………….…………..…………..iii

STATEMENT OF FACTS……...…………………………………..………….1

SUMMARY OF ARGUMENT……………………………………………9

ARGUMENT

    I.    DEFENDANT HAS WAIVED OR OTHERWISE
        FAILED TO PRESERVE FOR REVIEW ITS
        ARGUMENT THAT THERE WAS INSUFFICIENT
        EVIDENCE THAT PLAINTIFF COULD
        PERFORM THE ESSENTIAL FUNCTIONS
        OF ANOTHER AVAILABLE JOB…………………….…….9

    II.    THERE WAS SUFFICIENT EVIDENCE FROM
        WHICH A REASONABLE JUROR COULD
        RETURN A VERDICT FOR THE PLAINTIFF
        ON THE QUESTION OF WHETHER HE WAS
        QUALIFIED TO PERFORM THE ESSENTIAL
        FUNCTIONS OF ANOTHER AVAILABLE JOB…………10

    III.    THE EVIDENCE SUPPORTING DEFENDANT'S
        "GOOD FAITH" DEFENSE DOES NOT ENTITLE
        IT TO A REVERSAL OF THE JURY'S VERDICT…..……14

        A.    PLAINTIFF WAS NOT REQUIRED TO
            PROVE THAT THE DEFENDANT FAILED
            TO ENGAGE IN AN INTERACTIVE PROCESS…..14

        B.    DEFENDANT WAS NOT ENTITLED TO
            JUDGMENT AS A MATTER OF LAW ON
            ITS GOOD FAITH DEFENSE………………….……17

IV. THE SUBMISSION OF PUNITIVE DAMAGES
SHOULD BE AFFIRMED.....................................18

    A.    DEFENDANT HAS NOT PRESERVED FOR
APPEAL ITS CLAIM OF INSUFFICIENCY OF
EVIDENCE TO SUPPORT PUNITIVE
DAMAGES.................................................19

    B.    THERE WAS SUFFICIENT EVIDENCE TO
SUPPORT SUBMISSION OF PUNITIVE
DAMAGES FOR CONSIDERATION
BY THE JURY............................................20

V. THE DEFENDANT IS NOT ENTITLED TO A NEW
TRIAL BASED ON ADMITTING EVIDENCE OF
THE JULY 2004 OFFER OF EMPLOYMENT.............23

    A.    DEFENDANT HAS WAIVED ITS
OBJECTION TO THIS EVIDENCE...................23

    B.    THE TRIAL COURT DID NOT
ABUSE ITS DISCRETION............................26

VI. THE DAMAGES AWARDED ARE NOT EXCESSIVE.....27

CONCLUSION.....................................................31

CERTIFICATE OF FILING AND SERVICE.....................32

ADDENDUM...................................................Add. 1

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Browning v. President Riverboat Casino-Missouri, Inc.,          9, 19, 20
139 F.3d 631, 634, 636 (8th Cir. 1998)

Cox v. Dubuque Bank & Trust Co., 163 F.3d 492,                 20
495-496 (8th Cir. 1998)

Cravens v. BlueCross & BlueShield of Kansas City,              15
214 F.3d 1011, 1022 (8th Cir. 2000)

Eich v. Board of Regents of Cent. Missouri State University,   30
350 F.3d 752, 763 (8th Cir. 2003)
(quoting Ouachita National Bank v. Costco Corp.,
716 F.2d 485, 488 (8th Cir. 1983)

Henderson v. Simmons Foods, Inc., 217 F.3d 612,                21, 28
618 (8th Cir. 2000)

Kolstad v. American Dental Ass'n, 527 U.S. 526, 529 (1999)     21, 22-23

MacGregor v. , Inc., 373 F.3d 923, 927 (8th Cir. 2004),      10, 20
(quoting Browing v. President Riverboat Casino-Missouri, Inc.,
631, 634 (8th Cir. 1988))

Ohler v. US, 529 U.S. 753, 755 (2000)                          24

Otting v. JC Penney Co., 223 F.3d 707,                         21, 25
712 (8th Cir. 2000)

Welsner v. Titan Distrib., Inc., 267 F.3d 828,                 17
833 (8th Cir. 2001)

**OTHER AUTHORITIES**
42 U.S.C. § 1981a(a)(3)                                        16

42 U.S.C. § 1981a(b)(1)                                        21

iii

## STATEMENT OF FACTS

In March 2002, Plaintiff Lucas Canny was employed by Defendant Dr. Pepper/Seven-Up Bottling Group, Inc., a large company with at least 3,500 employees in its Midwest Division. (Tr. 342) Plaintiff held a position as route supervisor. (Tr. 51) On March 11, 2002, Plaintiff was informed by his physician that he suffered from an eye disease which, over time, had reduced his visual acuity to 20/200. (Pl. App. 45) The doctor told him that it was unlikely his vision would get any worse but that, as the doctor understood it, he would no longer be qualified to hold a motor vehicle driver's license in the state of Iowa. (Pl. App. 46, 49) The physician, Christopher Haupert, M.D., told the Plaintiff, and testified by deposition at trial, that the principal difficulties that the Plaintiff would experience because of his disease would be the inability to hold a driver's license and difficulty in reading small print. (Pl. App. 47) Dr. Haupert testified that the disease, Starghardt's maculopathy, impairs visual acuity, the eye's ability to distinguish detail and said that the Plaintiff could "function well in a position that did not require excellent visual acuity." (Pl. App. 48-49) Dr. Haupert also characterized the Plaintiff as being on the "high end" of functioning with his disease. (Pl. App. 48)

On the day after he learned of his disease, Plaintiff informed his employer. He told his immediate supervisor, Doug Canny (no relation to the Plaintiff) and the regional Human Resources Manager, Brenda Dixson about his diagnosis and that he would no longer be able to hold a driver's license because, as he understood it, his vision of 20/200 rendered him legally blind for driver's license purposes. (Pl. App. 3-4) He told Defendant that he wished to remain employed with the Defendant and that he would be willing to accept any job at any location in order to do so. (Pl. App. 64, Def. App. 131) He specifically inquired on that occasion about the possibility of warehouse positions, plant production jobs and work as a sales merchandiser. (Pl. App. 6)

Although Plaintiff's immediate supervisor, Doug Canny, was very interested in finding a way to keep Plaintiff employed with the Defendant, he did not have authority to make a decision to provide Plaintiff with another job. Brenda Dixson, together with the Des Moines division manager, Randy Hall, were the individuals who held the authority to reassign the Plaintiff. (Tr. 234, 256, 305) In her initial meeting with the Plaintiff on March 12, 2002, Brenda Dixson immediately expressed opposition to any proposal for reassignment of the Plaintiff to the plant or warehouse, stating that the

2

Plaintiff might "kill someone" or "lose an arm." (Pl. App. 9) Dixson's position never changed and neither she nor anyone else with the Defendant ever undertook any inquiry or investigation of any kind to determine the Plaintiff's actual capabilities to perform any of the jobs he requested or any of the jobs which became available at the facility during the ensuing six months prior to Plaintiff's termination. (Add. 13)

Immediately following the March 12, 2002 meeting, the Plaintiff was placed on short-term disability leave. He remained in that status for at least six months, after which his employment was terminated by the Defendant. (Tr. 310) During that six month period, numerous positions, including jobs in the warehouse and as merchandiser became available, but the Defendant did not offer those positions to the Plaintiff or even inform him of the openings. (Add. 1-3) Meanwhile, Doug Canny's interest in helping the Plaintiff find a reassignment with the Defendant was effectively blocked when he was directed by the division manager, Randy Hall, to break off all communication with the Plaintiff. (Def. App. 138, Pl. App. 18) Doug Canny testified that he was frustrated by his perception that the Defendant would not try to find a way to keep the Plaintiff employed. (Add. 6)

Although the Defendant has never disclosed to the Plaintiff

3

information regarding all of the positions that may have been available for reassignment during the period prior to his termination, Exhibit G, prepared by the Defendant for the purposes of litigation, reflects jobs which were filled in Iowa between March 5, 2002 and July 4, 2002. Among the jobs that became available just during that period in Iowa were several warehouse loader and merchandiser positions, none of which were offered to the Plaintiff. (Def. App. 79-80) The Defendant refused to consider Plaintiff for a warehouse loader position because he did not qualify for an Iowa driver's license. (Tr. 412) The Defendant refused to offer a merchandiser position to Plaintiff in 2002 based on its position that holding a driver's license was an essential requirement of the job. The evidence at trial established that the Defendant had no basis for either contention. Although the Defendant makes much of "policies" purporting to require a driver's license to work for it, the evidence was undisputed that a driver's license was only required for employees who had to drive over the road as part of their job. (Tr. 199, 263)

The Plaintiff testified at trial that he was able to safely operate a forklift and, therefore, perform the job of warehouse loader. (Add. 4) He testified that he had been trained by Defendant as a forklift operator and had

4

been issued a forklift operator's certification permit by the Defendant. (Tr. 56-57) He also testified that he had safely operated forklifts while employed by the Defendant at all times prior to his March 11, 2002 diagnosis and that he continued to be able to do so. (Add. 4-5) In fact, the Plaintiff explained to the jury that he has held positions with other beverage distributors since March 2002 in which he operates a forklift. In particular, he has performed that work while an employee of Schwarz Beer Distributing and was allowed to do so after disclosing his vision impairment to that employer. (Add. 5) Plaintiff's immediate supervisor, Doug Canny, also testified that he knew of no reason why the Plaintiff could not safely operate a forklift and pointed out that the Plaintiff had been safely doing so at all times prior to the diagnosis. (Add. 7) Matt Rose, the Transportation Supervisor with Defendant in March 2002, testified that he had observed Plaintiff operating a forklift in the Defendant's warehouse several times during the period between April 2001 and March 2002. (Pl. App. 43-44) Rose testified that he never had any reason to believe that the Plaintiff could not safely operate a forklift, and he believed that the Plaintiff could still do so as of the time of trial. (Pl. App. 42-43)

On direct examination by Defendant's counsel, Brenda Dixson testified at trial that there existed a requirement that forklift operators employed by the Defendant have vision of at least 20/40. During cross examination of Ms. Dixson, she admitted that this was not true and that the company had neither a written nor an unwritten policy requiring vision of 20/40 for forklift operators. (Add. 11-12) She also acknowledged that she had given previous affidavits in the case which never asserted such a requirement. (Pl. App. 24-25) Dixson conceded that she had never told the Plaintiff of any such requirement (Pl. App. 23) and that she never did anything else to determine whether the Plaintiff could, in fact, safely operate any equipment anywhere in the Defendant's entire operation. (Add. 13)

Notwithstanding the fact that the Defendant never informed the Plaintiff of any openings as a warehouse loader and never undertook any effort to determine Plaintiff's actual capabilities for that position, the evidence showed that it routinely conducted tests of its employees for the purpose of certifying them as forklift operators. Randy Hall, the division supervisor, testified that he had taken such a test and that it involved both a written test and a "skills" test. (Pl. App. 33) Notably, in May 2004, Defendant had required everyone in the sales department to take the test for

6

forklift certification. (Pl. App. 39-40) Tim O'Neill, the Vending Manager for the Defendant, testified that the May 2004 test was given to approximately twelve people in the sales department and that it required that they watch a video, take a written test and demonstrate their ability to operate a forklift. He testified that there was no vision test involved and that no questions were asked regarding the vision of those taking the test for certification. (Pl. App. 40-41) Similarly, Doug Canny testified that when an individual is certified for operation of a forklift with the Defendant, that person is not asked to take an eye test, and no questions are asked about the individual's vision. (Pl. App. 21)

Although much of the evidence at trial focused on the Plaintiff's qualifications for the warehouse loader position, the jury also heard evidence pertaining to the position of merchandiser. The job of merchandiser essentially involved moving beverages from the back room of a retailer to the shelves in the retailer's store. (Tr. 230) On this point, it should be noted that the job description for "Delivery/Merchandiser" which appears at pages 19-21 of Appellant's Addendum and pages 72-75 of Appellant's Appendix, it is not the job description for the position at issue in this case. The Delivery/Merchandiser position is a different position than the Merchandiser

7

position which Plaintiff contends he should have been offered. (Add. 1-2) The Delivery/Merchandiser position includes as a job requirement that the employee be able to "drive a company-owned tractor/trailer combination or straight truck weighing in excess of 26,000 pounds" and hold a commercial driver's license. As reflected in the job description for that position, that job involves both delivery of product to the customer and stocking of shelves following delivery. The Merchandiser position, on the other hand, involved only stocking shelves.

Both the Plaintiff and his immediate supervisor, Doug Canny, testified that the Plaintiff could perform the work of a merchandiser and that it would be feasible for the Plaintiff to travel between locations without having to drive a motor vehicle. (Add. 1-2, 8) Although the Defendant refused to offer such a position to the Plaintiff when it was available in 2002, the same accommodation was ultimately proposed in July 2004, shortly before trial, at the direction of Defendant's corporate counsel. (Tr. 330) The Plaintiff was unable to accept the position in July 2004 because the job would have required him to leave Ottumwa and, by that time, his wife had begun a course of schooling that required the family to remain the Ottumwa area. (Tr. 118-119)

## SUMMARY OF ARGUMENT

1) The Defendant did not preserve for appellate review its claims of insufficiency of evidence of discrimination and punitive damages or its claim of abuse of discretion.

2) Sufficient evidence was presented to support the jury's verdict in all respects.

3) The Defendant was not entitled to judgment as a matter of law on its good faith defense.

4) Damages were not excessive.

## ARGUMENT

## I. DEFENDANT HAS WAIVED OR OTHERWISE FAILED TO PRESERVE FOR REVIEW ITS ARGUMENT THAT THERE WAS INSUFFICIENT EVIDENCE THAT PLAINTIFF COULD PERFORM THE ESSENTIAL FUNCTIONS OF ANOTHER AVAILABLE JOB.

As a prerequisite to review on appeal, claims of insufficiency of evidence must be first raised at trial in a motion for judgment as a matter of law. Browning v. President Riverboat Casino-Missouri, Inc. 139 F.3d 631, 636 (8th Cir. 1998).

In this case, Defendant's motion for judgment as a matter of law specifically omitted any claim that there was an insufficiency of evidence

that Plaintiff could have performed the work of a warehouse loader, stating that "the Motion for Directed Verdict really isn't pursued with respect to that position." (Def. App. 124)  As stated in Defendant's argument at trial, the decision not to pursue judgment as a matter of law with respect to that issue was based upon Defendant's recognition that substantial evidence had been presented in support of Plaintiff's claim.  (Def. App. 124)

In light of the Defendant's acknowledgement that there was a jury question presented at least with respect to Plaintiff's qualifications to perform the essential functions of a warehouse loader, Defendant should not be heard now to argue that it was error for the trial court to submit it to the jury.

## II.    THERE WAS SUFFICIENT EVIDENCE FROM WHICH A REASONABLE JUROR COULD RETURN A VERDICT FOR THE PLAINTIFF ON THE QUESTION OF WHETHER HE WAS QUALIFIED TO PERFORM THE ESSENTIAL FUNCTIONS OF ANOTHER AVAILABLE JOB.

A jury verdict will be set aside on grounds of insufficient evidence only if there is a "complete absence of probative facts to support the verdict." MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 927 (8th Cir. 2004).  Plaintiff presented clear and substantial evidence that he could perform the essential functions of at least two of the jobs that became

available with the Defendant during the period prior to his termination.

First, Plaintiff proved that he was qualified to perform the essential functions of a warehouse loader. As discussed previously, the Defendant acknowledged at trial that a jury issue was presented on this question. (Def. App. 124) The specific factual dispute was whether the Plaintiff was capable of safely operating a forklift in the warehouse. In support of his position that he was qualified, Plaintiff presented his own testimony to that effect stating specifically that he was able to safely operate a forklift in a warehouse setting. (Add. 4) He testified that he held a permit, issued by the Defendant, establishing his qualifications to operate a forklift and that he had safely operated a forklift on the job at Defendant's warehouse up until the time he was placed on leave. (Tr. 56-57) Significantly, Plaintiff also testified that in jobs he had held with other beverage distributors since March 2002, he was allowed and required to operate forklifts in similar settings even after informing those employers of his disability. (Add. 4-5) In addition, Plaintiff's immediate supervisor, Doug Canny (no relation), acknowledged Plaintiff had been safely operating a forklift up until the time he was placed on leave and that there was no reason to think that he could not still do so. (Add. 7)

11

For its part, the Defendant presented no real evidence that the Plaintiff was unable to operate a forklift. Although Brenda Dixson testified on direct examination that, there was a requirement that warehouse loaders have at least 20/40 vision, she admitted on cross examination that Defendant had no such policy, written or unwritten. (Add. 11-12) Randy Hall, the other decision maker for the Defendant, stated the company's current policy for certification of forklift operators was to require that they pass a written test and a skills test. (Pl. App. 33) However, Defendant never offered the Plaintiff the opportunity to take such a test.

The Defendant based its decision to deny Plaintiff employment as a warehouse loader on its position that such employment would impose a direct threat to the health or safety of Plaintiff or others. The jury was informed of this defense in Instruction No. 17. As stated in that Instruction, Defendant's assessment that a direct threat exists "must be based on either a reasonable medical judgment that relies on the most current medical knowledge, or on the best available objective evidence." Certainly there was ample basis for the jury to decide that the Defendant had not established this defense. There is no evidence of any "medical judgment" that the Plaintiff represented a direct threat to others' safety. Indeed, Dr. Haupert testified

12

that Plaintiff's only limitations were that he could not hold a license to operate a motor vehicle and that he might have difficulty reading small print. As to the "best available objective evidence", the jury could reasonably have concluded that that evidence would either have been Plaintiff's actual experience in operating a forklift while disabled or direct testing of his abilities. As discussed, the undisputed evidence showed that the Plaintiff was able to safely operate a forklift and the Defendant chose not to test the Plaintiff's abilities despite the fact that it was in the practice of offering such tests to prospective forklift operators.

In summary, even if the Defendant had sought judgment as a matter of law that there was insufficient evidence Plaintiff could perform the functions of a warehouse loader, there would have been no basis for granting such a motion. The Plaintiff presented substantial and persuasive evidence that he could do so, and the Defendant's "direct threat" defense was not proved.

Although the substantial evidence that the Plaintiff was qualified to perform work as a warehouse loader is sufficient to sustain the trial court's submission of the issue to the jury, there was also substantial evidence that the Plaintiff could perform the work of a merchandiser. Both the Plaintiff and his immediate supervisor, Doug Canny, testified that the Plaintiff was

able to work as a merchandiser and that it was not critical to performance of that work that he hold a driver's license. (Add. 1-2, 8) Although the Defendant contended at trial, as it argues now, that driving is an essential element of the merchandiser job, their argument in that respect was plainly undermined by the July 2004 offer of a merchandiser position to the Plaintiff. In that offer, the Defendant showed that it was possible to accommodate Plaintiff's disability by allowing him to move from location to location by some means other than driving himself. There is simply no merit in Defendant's contention that there was an insufficiency of evidence that the Plaintiff could have performed the essential functions of other jobs.

## III. THE EVIDENCE SUPPORTING DEFENDANT'S "GOOD FAITH" DEFENSE DOES NOT ENTITLE IT TO A REVERSAL OF THE JURY'S VERDICT.

### A. PLAINTIFF WAS NOT REQUIRED TO PROVE THAT THE DEFENDANT FAILED TO ENGAGE IN AN INTERACTIVE PROCESS.

The District Court properly instructed the jury on the elements of Plaintiff's reasonable accommodation claim. (Jury Instruction No. 15) The Defendant did not challenge that Instruction at trial and does not do so on appeal. (Tr. 16) It is not an element of Plaintiff's claim to prove that the Defendant failed to engage in an interactive process. Indeed, neither the

words "interactive process" nor the purported elements of proof to which Defendant now seeks to hold the Plaintiff (Appellant's Brief, pgs. 18-19) appear in the jury instructions nor did the Defendant at any time assert that such instructions should be given.

The Defendant misapprehends the significance of the "interactive process" issue. As reflected in previous decisions of this Court and in the commentary to the 8th Circuit's Model Civil Jury Instructions, the Defendant's engagement in an interactive process of exploring possible reasonable accommodations of a disability is relevant at the level of summary judgment practice and at trial for two different, but related, purposes. First, this Court has held that a plaintiff may defeat a motion for summary judgment by producing evidence that there is a genuine dispute as to whether the employer acted in good faith and engaged in the interactive process as of seeking reasonable accommodations. Cravens v. BlueCross & BlueShield of Kansas City, 214 F.3d 1011, 1022 (8th Cir. 2000). See, also, Section 5.50 of the Manual of Model Civil Jury Instructions for the District Courts of the 8th Circuit, p. 128 (May 2005). At trial, the employer's engagement, or failure to engage, in an interactive process is relevant primarily to the employer's "good faith" defense as reflected in the present

15

case in Jury Instruction No. 18. That Instruction, to which Defendant did not object at trial, requires the jury to answer the following question: "Has it been proved by the greater weight of the evidence that the defendant made a good faith effort, including consulting with the plaintiff to identify and make a reasonable accommodation?" (Jury Instruction No. 18) The language of this defense "is derived from 42 U.S.C. § 1981a(a)(3), which provides that the plaintiff may not recover damages if the defendant 'demonstrates good faith efforts' to arrive at a reasonable accommodation with the plaintiff." Manual of Model Civil Jury Instructions for the District Courts of the 8th Circuit, p. 156 (May 2005).

In view of the fact that the Plaintiff did not at trial have any burden to prove that the Defendant failed to participate in an interactive process to determine reasonable accommodation, Defendant's appeal argument on this point should be rejected outright. At trial, the Defendant appeared to recognize that the question of good faith participation in an interactive process was a defense that it was required to prove rather than being an element of the Plaintiff's claim. In the Defendant's motion for judgment as a matter of law at the close of Plaintiff's evidence, the Defendant described this issue as "the issue of the interactive process or the issue of good

faith..." and characterized the matter as the "good faith defense."

(Appellant's App. 124-125) Thus, in its motion for judgment as a matter of

law, the Defendant was essentially asserting that it had proved its defense as

a matter of law. It based this contention on the evidence of "multiple

contacts" between the Plaintiff and the Defendant pertaining to Plaintiff's

request for accommodation.

## B. DEFENDANT WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS GOOD FAITH DEFENSE.

Even if this Court were to treat Defendant's appeal on this issue as an

argument that it proved its defense as a matter of law, the argument fails.

When reviewing sufficiency of evidence, a court views all facts in favor of

the nonmoving party. Webner v. Titan Distrib., Inc., 267 F.3d 828, 833 (8th

Cir. 2001). The jury in this case could very reasonably have decided, as it

did, that the Defendant did not prove its good faith. The evidence showed

that immediately upon learning of Plaintiff's disability, Brenda Dixson took

the position that there was "no way" Plaintiff could work in any position in

the plant or warehouse and she never changed that position or engaged in

any investigation or inquiry regarding Plaintiff's actual capabilities.

Although Plaintiff's immediate supervisor, Doug Canny, believed that

positions could be found for the Plaintiff and, specifically, that the Plaintiff

17

was capable of working in the warehouse (Add. 7) or as a merchandiser (Add. 8), he had no authority to make those decisions. When Doug Canny continued to pass his ideas on to the decision maker, Brenda Dixson, he was directed to break off all communication with the Plaintiff. (Tr. 73-74) Brenda Dixson and Randy Hall both acknowledged that when warehouse loader positions came open they did not consider the Plaintiff for those positions and did not inform him of those openings. (Tr. 293) Neither Hall nor Dixson ever spoke with the Plaintiff regarding his abilities to operate a forklift or other equipment. (Add. 13, Pl. App. 36-37) One of the most illuminating statements by Dixson at trial was her admission that she never even made inquiry regarding whether there were any jobs available in the production area of the plant. (Pl. App. 32) This was clearly not the attitude, as the jury no doubt recognized, of someone engaged in a good faith effort to explore options for accommodation of a disability. There is no error in the trial court's denial of defendant's motion for judgment as a matter of law in its favor on its good faith defense.

## IV. THE SUBMISSION OF PUNITIVE DAMAGES SHOULD BE AFFIRMED.

## A. DEFENDANT HAS NOT PRESERVED FOR APPEAL ITS CLAIM OF INSUFFICIENCY OF EVIDENCE TO SUPPORT PUNITIVE DAMAGES.

In order to review a claim of insufficiency of evidence, this Court requires that the issue first be raised at trial in a motion for judgment as a matter of law. Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 636 (8th Cir. 1998). In the present case, the Defendant did not do so. The first time it claimed that there was insufficient evidence to support punitive damages was when it took exception to Jury Instruction No. 5, the punitive damage instruction. (Tr. 455) The argument was not asserted in either the motion for judgment as a matter of law asserted at the closed of Plaintiff's evidence (Appellant's App. 122-125) or in its renewed motion at the close of all the evidence (Tr. 451-452) Although this Court has held that a motion arguing insufficiency of evidence of discrimination may be "sufficient to apprise as the District Court of the alleged insufficiency of Plaintiff's suit with respect to the punitive damages claim", Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 636 (8th Cir. 1998), the Defendant's motion in the present case is not so generally worded. Rather, the Defendant specifically limited its motion to the arguments that: (a) that the evidence was insufficient to generate a jury

19

question regarding Plaintiff's ability to perform the essential functions of another job (other than warehouse loader), and (b) that it had established as a matter of law its defense of good faith. (Appellant's App. 122-125) In its renewed motion at the close of all the evidence, the Defendant again specifically argued that the Plaintiff had failed to show that he could perform the essential functions of another job; however, it did not specifically reassert its motion with respect to its good faith defense. Neither of these motions constituted a motion for judgment as a matter of law with respect to punitive damages.

## B. THERE WAS SUFFICIENT EVIDENCE TO SUPPORT SUBMISSION OF PUNITIVE DAMAGES FOR CONSIDERATION BY THE JURY.

In order to prevail on its argument of insufficiency of evidence, the Defendant must show that when the evidence is viewed in the light most favorable to the Plaintiff, no reasonable juror could have returned a verdict for Plaintiff. Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 495-496 (8th Cir. 1998). A jury verdict will be set aside on grounds of insufficient evidence only where "there is a complete absence of probative facts to support the verdict." MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 927 (8th Cir. 2004), (quoting Browning v. President Riverboat Casino-Missouri,

Inc., 631, 634 (8th Cir. 1988)). In this case, there was more than sufficient evidence upon which a reasonable juror could base an award of punitive damages.

The standard for awarding punitive damages in discrimination cases is whether the Defendant acted with malice or reckless indifference to the Plaintiff's rights. Kolstad v. American Dental Ass'n, 527 U.S. 526, 529 (1999). In Kolstad, the Court interpreted the provisions of 42 U.S.C. § 1981a(b)(1) as providing for punitive damages based not on the egregiousness of the defendant's conduct but rather solely on the defendant's state of mind. Kolstad, 527 U.S. at 535. This Court has held that such a state of mind is established by a showing of "deliberate indifference", Henderson v. Simmons Foods, Inc., 217 F.3d 612, 618 (8th Cir. 2000), or that the employer has "made no effort whatsoever to explore any possibility" that would allow the Plaintiff to return to work, Otting v. JC Penney Co., 223 F.3d 707, 712 (8th Cir. 2000). There is ample evidence from which the jury in this case could find that the Defendant was deliberately indifferent to Plaintiff's request for accommodation and made no effort to explore options for accommodation. Evidence the jury could reasonably have relied upon in awarding punitive damages included

21

evidence that Defendant made no effort to determine the Plaintiff's actual ability to operate a forklift or perform any other job (Pl. App. 26-27); the Defendant had no conversation with the Plaintiff regarding his capabilities; Brenda Dixson did not even make an inquiry regarding the availability of jobs in the production side of the plant (Pl. App. 15); Randy Hall was unwilling even to consider the possibility that it would be safe for Plaintiff to have a job that simply involved walking in the warehouse (Pl. App. 417); Brenda Dixson refused to meet or talk to Brenda Cristwell of the Iowa Department for the Blind regarding possible accommodations for the Plaintiff (Tr. 174-176, 190-191); Doug Canny was directed by Randy Hall to break off all communication with the Plaintiff (Def. App. 138); the Defendant may have been more interested in eliminating positions than in accommodating disabled employees (Tr. 354-355); and Dixson's visceral initial reaction to Plaintiff's request for accommodation when she stated without any reasonable basis for investigation that the Plaintiff might "kill someone or lose an arm." (Pl. App. 9)

The Court in Kolstad also stated that for a punitive damage award there must be a showing that the employer has discriminated "in the face of a perceived risk that its actions will violate federal law." Kolstead v.

American Dental Ass'n, 527 U.S. 526, 536 (1999). Although it is not clear from Appellant's Brief whether Defendant now claims that it did not have knowledge that it may be acting in violation of federal law, there is substantial evidence from which the jury could reasonably conclude that the Defendant was fully aware of its legal obligations. In particular, Brenda Dixson testified that she was in regular communication with her corporate legal counsel from at least as early as March 2002 when the company received the letter from the Iowa Department for the Blind. (Tr. 391-392) There is simply no basis for suggesting an absence of evidence that the Defendant knew it might be acting in violation of federal law. The jury could reasonably infer that Ms. Dixson and Mr. Hall were informed of the company's legal obligations and that their refusal to give meaningful consideration to Plaintiff's requests for accommodation violated their legal duties.

## V. THE DEFENDANT IS NOT ENTITLED TO A NEW TRIAL BASED ON ADMITTING EVIDENCE OF THE JULY 2004 OFFER OF EMPLOYMENT.

### A. DEFENDANT HAS WAIVED ITS OBJECTION TO THIS EVIDENCE.

On appeal, the Defendant seeks a new trial based upon a claimed abuse of discretion by the trial court in admitting evidence of an offer of

employment made by the Defendant to the Plaintiff. The employment offer in question was set forth in a letter from Defendant's counsel to Plaintiff's counsel dated July 30, 2004. A copy of that letter appears at pages 59-60 of Appellant's Appendix. Although it was identified as Plaintiff's Exhibit 1, it was never offered into evidence. It was not offered because the trial court sustained the Defendant's motion in limine requesting that the letter be excluded from evidence. (Tr. 163) In ruling on the motion in limine, the Court stated that it would allow an offer of the attachments to the letter, pages 3-8 of Exhibit 1 (Appellant's App. 61-66); however, those pages were never offered into evidence either. Despite its exclusion of the July 30, 2004 letter, the trial court did rule that the Plaintiff could cross-examine Defendant's witnesses about the information contained in the letter. (Tr. 165) In fact, however, the evidence was not the first offered or elicited by the Plaintiff. Instead, as acknowledged in Appellant's Brief (Appellant's Brief 27), the Defendant first introduced the evidence through direct examination of its witness Brenda Dixson. By preemptively introducing this evidence, the Defendant waived its objection and is barred from challenging admission of the evidence on appeal. Ohler v. US, 529 U.S. 753, 755 (2000). In Ohler, the Defendant in a criminal prosecution argued that she

24

should not be deemed to have waived her objections to evidence when, following an in limine ruling allowing the evidence over her objection, she preemptively introduced the evidence to avoid the possibility that the jury would think she was "less credible because she was trying to conceal" the evidence. The Supreme Court rejected this argument. The evidence in Ohler was of a prior conviction which the defendant contended should have been excluded from evidence. In addressing the dilemma faced by the defendant when her pretrial objection was overruled, the Supreme Court stated

> "The Defendant must choose whether to introduce the
> conviction on direct examination and remove the sting
> or take her chances with the prosecutor's possible
> elicitation of the conviction on cross-examination."
> 529 U.S. at 758.

The Defendant in the present case faced the same dilemma. As frankly acknowledged in its brief (Appellant's Brief 27), it made the reasonable practical decision to introduce the evidence itself "in order to attempt to diminish the prejudice." Although the decision was a reasonable one as a matter of trial tactics, the price of that decision is that the objection to the evidence was waived.

25

## B. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION.

Rulings on admission of evidence are reviewed for abuse of discretion. <u>Otting v. J.C. Penney Co.</u>, 223 F.3d 704, 713 (8th Cir. 2000). Even if this Court were to address the merits of Defendant's argument, there has been no showing of an abuse of discretion by the trial court. It was entirely reasonable for the Court to allow the jury to consider this evidence as bearing on Defendant's claim that no reasonable accommodation was available that would allow Plaintiff to work as a merchandiser. The Defendant's contention that the offer involved a waiver of an essential requirement of the job begs the question. The jury could well find that the offer to allow Plaintiff to perform the merchandiser function without having a driver's license was strong evidence that driving was not an essential requirement of the job. Finally, the issues of what were the essential job requirements for particular positions were issues for the jury to decide based on all the evidence. The evidence of Defendant's July 2004 offer was entirely relevant to that consideration.

The offer of the merchandiser position in July 2004 was relevant for another purpose, as well. The terms of the offer specifically contemplated that if the Plaintiff wanted to be able to use a forklift or a pallet jack in

connection with the merchandiser position the Defendant would first have him evaluated by a physician to see whether he had that ability. (Plaintiff's App. 31) That provision of the offer was relevant to the jury's determination of whether Defendant recklessly disregarded its duty to accommodate, when it previously refused to consider Plaintiff for the job of warehouse loader without conducting any investigation into his actual abilities.

The evidence of Defendant's July 2004 offer of employment was properly received, and no error can be asserted based upon that evidence.

## VI.    THE DAMAGES AWARDED ARE NOT EXCESSIVE.

Defendant argues that the jury failed to apply the law on mitigation of damages as required in the trial court's instructions. To the contrary, the jury carefully followed the instruction and properly found that the Defendant had not established its mitigation defense. The instruction on mitigation, to which the Defendant did not object, is included in Instruction No. 3 of the additional jury instructions submitted at the conclusion of the evidence. The instruction properly places the burden on the Defendant to prove "by the greater weight of the evidence that the Plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to him..." (Jury Instruction No. 3) It is well established that the defense bears the burden of

27

proving both that "there were suitable positions and that the Plaintiff failed to use reasonable care in seeking them." Henderson v. Simmons Foods, Inc., 217 F.3d 612, 618 (8th Cir. 2000). The Defendant presented no evidence, and cites none on this appeal, either of opportunities which were reasonably available to the Plaintiff or of the amount of either of wages or fringe benefits he reasonably could have earned from any such opportunity. To the contrary, the evidence showed that the Plaintiff sought work immediately following March 12, 2002. He found work with Schwarz Beer Wholesalers in June 2002 and worked part-time for that company until October 2002. He then worked for Mahaska Bottling Company as a warehouse loader from March 2003 to November 2003 when he was laid off. He remained on layoff status at the time of trial. Although he had expected to be recalled in early November 2004, that had not yet happened. In the meantime, he had returned to Schwarz Beer Wholesalers for part-time work which continued from May 2004 to the time of trial. The trial court accurately summarized the evidence on this point in its Order on post-trial motions as follows:

> "Plaintiff did seek full-time opportunities with Defendant, but he was rebuffed. Plaintiff found work in the Ottumwa area consistent with his abilities, experience, and the seasonal nature of warehouse loading for small bottling companies. The

28

> fact that he could not locate a full-time position with benefits does not mean that he failed to take advantage of opportunities reasonably available to him." (Appellant's Addendum 13-14)

Defendant also argues, in a footnote, that the Plaintiff is entitled to lost income damages commencing May 2, 2002, rather than March 12, 2002 because that was the date of the first hiring for a warehouse loader as reflected on Defendant's Exhibit G. (Appellant's App. 79) This argument assumes that the jury was required to believe that the first open position which Defendant could have offered the Plaintiff had a work starting date no earlier than May 2, 2002. This is a finding the jury is not required to make the under evidence. First, Exhibit G itself shows only that the earliest "Hire Date" for a warehouse loader reflected in that exhibit was May 2, 2002. The fact that that may have been the hire date does not indicate that May 2 was the first date the job was available. The jury could reasonably concluded that the job may have been available as much as six weeks before that date. Second, Exhibit G was a document generated by the Defendant for purposes of this litigation, and it reflected hiring only in Iowa facilities. It was undisputed at trial that the Plaintiff was willing to take a job with the Defendant anywhere in the country. Consistent with its other findings of bad faith and reckless indifference to Plaintiff's rights, the jury could

reasonably have concluded that the Defendant had purposefully withheld information regarding warehouse openings at locations outside Iowa. Third, Exhibit G reflects a first Hire Date for a merchandiser on March 20, 2002. The jury could reasonably have found that the Defendant could have reasonably accommodated the Plaintiff by offering him such a position as a merchandiser and that the position would have been available as early as March 12, 2002. Finally, Plaintiff's argument on this point overlooks the fact that the jury verdict incorporated a reduction of the Plaintiff's damages for receipt of $1,200.00 per month in short-term disability benefits. Thus, if the jury were to assume any start date later than March 12, 2002, the deduction for disability benefits would have been also reduced at the rate of $1,200.00 per month. All in all, any discrepancy in the jury's calculations on this issue is minimal even viewing the evidence in the light most favorable to the Defendant which, of course, is not the view taken on this appeal.

A remittitur of damages will be ordered "only when the verdict is so grossly excessive as to shock" the court's conscience. Eich v. Board of Regents of Cent. Missouri State University, 350 F.3d 752, 763 (8th Cir.

2003) (quoting <u>Ouachita National Bank v. Costco Corp.</u>, 716 F.2d 485, 488 (8th Cir. 1983). The Defendant has fallen well short of this standard and is not entitled to a remittitur.

## CONCLUSION

In conclusion, the Plaintiff states that:

4)      The Defendant did not preserve for appellate review its claims of insufficiency of evidence of discrimination and punitive damages or its claim of abuse of discretion.

5)      Sufficient evidence was presented to support the jury's verdict in all respects.

6)      The Defendant was not entitled to judgment as a matter of law on its good faith defense.

7)      Damages were not excessive.

Accordingly, the judgment and rulings of the trial court should be affirmed in all respects and attorneys fees and costs should be awarded to Plaintiff in connection with this appeal.

_(signature)_

William W. Graham
The Graham Law Firm, P.C.
604 Locust Street, Suite 630
Des Moines, IA 50309
Phone: (515) 282-0230
Facsimile: (515) 282-4235
E-mail: wwg@grahamlawiowa.com

ATTORNEY FOR APPELLEE

## CERTIFICATE OF WORD PROCESSING PROGRAM

The undersigned certifies that this brief complies has been prepared in

a proportionally-spaced typeface using Word in Times New Roman 14.

_(signature)_

William W. Graham

## COST CERTIFICATE

I hereby certify that the cost of producing necessary copies of the

foregoing brief, exclusive of stenographic expense, was $86.40.

_(signature)_

William W. Graham

## CERTIFICATE OF FILING AND SERVICE

The undersigned hereby certifies that two copies of the foregoing brief

were mailed to the persons listed below at the address indicated on the

_16_ day of _June_ , 2005, in a United States Post Office Mail

receptacle in Des Moines, Iowa.

32

Gayla R. Harrison
Harrison, Moreland & Webber, P.C.
129 West Fourth Street
P.O. Box 250
Ottumwa, IA  52501

The undersigned further certifies that ten copies of the foregoing brief
were sent by first class mail, postage prepaid, to the Clerk of the United
States Court of Appeals for the Eighth Circuit, 110 South 10th Street, Room
24.329, St. Louis, Missouri 63102, on _June 16, 2005_

William W. Graham

## CERTIFICATE OF FILING DIGITAL COPY

The undersigned further certifies pursuant to 8th Cir. R. 28A(d), that
this brief was further filed by sending one CD-ROM containing the brief to:
Clerk of the United States Court of Appeals for the Eighth Circuit, 110
South 10th Street, Room 24.329, St. Louis, Missouri 63102, on
_June 16, 2005_ .  The undersigned further certifies that the filed
copies to the CD-ROM was scanned for viruses and was virus-free.  A
digital copy of the brief on CD-ROM was also furnished to counsel for
Appellant on _June 16, 2005_ .

William W. Graham

33